**EXHIBIT 12**

**MR. GLUCK:** Was it ultimately agreed that Belbadi Enterprises would issue a guarantee to secure the payments of iCapital in connection with that healthcare project?

**MR. WHITE:** Yes.

**MR. GLUCK:** Did you personally negotiate and participate in that negotiation process?

**MR. WHITE:** Yes. I let the negotiations to the contract, pre-negotiations, along with our corporate attorney.

**MR. GLUCK:** Do you see Plaintiff Exhibit 66 on your screen right now? Do you see a guarantee that's marked with Cerner and Belbadi stamps on the first page?

**MR. WHITE:** I do.

**MR. GLUCK:** Does this appear to you to be the guarantee that was executed in connection with the medical project?

**MR. WHITE:** It does. And I believe in a previous view I saw my signature initials in the bottom left corner of the document when it was a different resolution.

**MR. GLUCK:** Now I'm not going to ask you about a lot of clauses in the guarantee. I think it speaks for itself. But there's a couple issues that I am going to ask you about here today that are in dispute. Let's first move towards the concept of these guarantees. Was Cerner concerned about iCapital's ability to make payments?

**MR. WHITE:** We were.

**MR. GLUCK:** And did Cerner believe that a guarantee from Belbadi would secure assistance securing those payments?

**MR. WHITE:** We did.

**MR. GLUCK:** In negotiating and executing these guarantees, did Cerner believe that Belbadi was putting all of its assets at issue to back those guarantees?

**MR. WHITE:** Yes. That was our request.

**MR. GLUCK:** Now, did Cerner know about the Vancouver Center when it was negotiating these guarantees?

**MR. WHITE:** We did.

**MR. GLUCK:** You specifically relied on the Vancouver Center. Is that right?

**MR. ANDERSEN:**  Your Honor, objection, leading.

**JUDGE:**  Overruled.

**MR. GLUCK:**  Did you specifically rely on the Vancouver Center in connection with the negotiation of these guarantees?

**MR. WHITE:**  We did.

**MR. GLUCK:**  Why did you specifically rely on the Vancouver Center as opposed to any of the other assets of Belbadi?

**MR. WHITE:**  We reviewed as many, if not all of the assets, that could be identified.  This was an asset that was in the United States in Washington State, as we are aware of.  It was a clear asset that we felt if it was necessary could be used as collateral against the guarantees with the contract.

**MR. GLUCK:**  Have you seen personally an early draft of the guarantee Cerner prepared which listed the Western District of Washington as the forum for any disputes under the guarantees?

**MR. WHITE:**  I have.

**MR. GLUCK:**  Are you aware of any assets other than the Vancouver Center

**[00:10:00]**

in the Western District of Washington that are owned by Belbadi

**MR. WHITE:**  I am not aware of any others.  We were not aware of any or had located any other assets.

**MR. GLUCK:**  Thank you.  Okay.  The next item I would like to take you to is the jurisdiction clause in the guarantees.  [PH] Mr. Magruder is operating our trial software.  Mr. Magruder, would you please go to the—thank you.  Was there a discussion between the parties and within Cerner—

**JUDGE:**  Help the court out.  What are you looking at?

**MR. GLUCK:**  We are looking at Section 7, Clause B of the current exhibit.  It's highlighted on the Zoom screen.

**MR. ANDERSEN:**  Your Honor, I don't think this exhibit has been admitted yet.

**MR. GLUCK:**  We move to admit this exhibit.

**MR. WHITE:**  I do.

**MR. GLUCK:**  Now, but there were other ones.  There were other changes to edits and red lines to the guarantees, right?

**MR. WHITE:**  Correct.

**MR. GLUCK:**  So  you don't know whether the other edits to the guarantees also didn't make it into the Arabic?

**MR. WHITE:**  I wouldn't know.

**MR. GLUCK:**  When Cerner -- when you were negotiating with Belbadi and iCapital, did you specifically discuss the concept that Cerner believed or would demand that Belbadi put up all its assets for credit so that Cerner would continue with the performance?

**MR. WHITE:**  Yes, that was the intent of the discussions and the guarantee.

**MR. GLUCK:**  I'm just checking to see if I  have anything else.  No further questions.

**JUDGE:**  Redirect or recross?

**MR. ANDERSEN:**  No, your Honor.

**JUDGE:**  Very good.  Mr. White, thank you very much for appearing here today.  I apologize for the cumbersome way it has to be done.  But I don't know that he's necessarily released from his subpoena in the event that there's rebuttal.  That might be.  So, you may get a phone call in the event that they need you to come back for a rebuttal.

**MR. WHITE:**  I understand.

**JUDGE:**  Thank you.  Call your next witness.

**MR. WHITE:**  Thank you, sir.

**MR. GLUCK:**  Plaintiff calls Mr. Chad Eiken.

**JUDGE:**  Chad Eiken, are you on the Zoom?  He's probably muted.

**MR. ANDERSEN:**  Your Honor, I believe your clerk needs to admit him to the meeting.  He's on but there's some step that needs to be taken.  I think Kim can do that.

**MR. GARFIELD:**  I see him.